IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| **RODNEY JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:08-01385** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 6.) Neither party has filed briefs in the matter.

The Plaintiff, Rodney Johnson (hereinafter referred to as "Claimant"), filed an application for DIB on February 25, 2004, alleging disability as of May 16, 2003, due to a dislocated shoulder, high blood pressure, and depression. (Tr. at 16, 92, 101, 120-22.) The claim was denied initially and upon reconsideration. (Tr. at 92-94, 101-03.) On November 8, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 105.) A hearing was held on January 12, 2006, before the Honorable Steven A. De Monbreum. (Tr. at 52-89.) A supplemental hearing was held on August 15, 2006. (Tr. at 30-51.) By decision dated January 31, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-28.) The ALJ's decision became the final decision of the Commissioner on October 9, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) On December 3, 2008, Claimant brought the present action seeking judicial review of

the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in

the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

>incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since May 16, 2003, the alleged onset date. (Tr. at 20, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from residuals of injuries to the right shoulder, depression, and anxiety, which impairments the ALJ found were severe. (Tr. at 20, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for performing a range of work activities at the light level of exertion, as follows:

>Specifically, the [C]laimant can lift and/or carry up to[] 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours total in an 8-hour workday; sit about 6 hours total in an 8-hour workday; occasionally climb stairs and ramps, balance, and crouch; and frequently stoop and kneel, but cannot crawl or climb ladders, ropes, or scaffolds. He cannot perform activities that require overhead reaching with the right upper extremity and needs to avoid hazards. Due to his psychological symptoms, he has moderate limitations in his ability to maintain attention and concentration for extended periods of time.

(Tr. at 24, Finding No. 5.) As a result, Claimant could not return to his past relevant work. (Tr. at 26, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that there were jobs existing in significant numbers in the regional and national economies which Claimant could perform such as a night watchman, counter clerk, and usher/lobby attendant, at the light level of exertion. (Tr. at 27, Finding No. 10.) On this basis, benefits were denied. (Tr. at 28, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on June 23, 1966, and was 39 years old at the time of the first administrative hearing, January 12, 2006. (Tr. at 26, 57.) Claimant had a high school education. (Tr. at 26, 58-59.) In the past, he worked as a grocery store stock/produce clerk and maintenance worker. (Tr. at 26, 37-38, 59-62.)

Claimant's Challenges to the Commissioner's Decision

Neither the Commissioner nor the Claimant filed briefs in this matter. However, in his Request for Review of Hearing Decision/Order, Claimant asserted: "I do not agree with the Judge's

decision that there are significant number[s] of jobs I can perform. I cannot push or pull or, lift more than 10 pounds." (Tr. at 9.) The Court has considered this argument, and because there were no briefs before the Court, this Court has also reviewed the entire record to see if it comports with the substantial evidence standard.

Analysis.

1. Functional Limitations.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence,

7

> including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2007).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The record demonstrates that Claimant sustained a work-related right shoulder injury in 2000. On August 31, 2004, Claimant underwent an arthroscopy of the shoulder with a posterior capsular plication. (Tr. at 627.) However, in October, 2004, Claimant re-dislocated his shoulder and reported recurrent dislocations thereafter, even while sleeping. (Tr. at 627.) As the ALJ noted, Claimant underwent several diagnostic studies with the results being only mild abnormalities, "such as joint effusion, mild subluxation of the humeral head, some irregularity of the glenoid fossa, early degenerative changes, and post operative changes." (Tr. at 25, 522, 543, 544-49, 662-67, 672-78.) On October 13, 2005, Drs. Smith and Bal opined that Claimant's pain resulted from osteoarthritis and not necessarily instability. (Tr. at 25, 672-73.) Likewise, a Functional Capacities Evaluation on February 10, 2006, revealed a full range of shoulder motion, but Claimant subsequently went to the emergency room complaining of a dislocated right shoulder. (Tr. at 25, 704.) During examination, Claimant's shoulder popped back into place on its own and Claimant's wife insisted that his shoulder pain be noted in the Evaluation. (Id.) As the ALJ noted in his decision, the medical and opinion evidence failed to establish any work-related limitations that would preclude all work related

8

activities. (Tr. at 25.) A residual functional capacity assessment conducted by a state agency reviewing physician on March 25, 2004, demonstrated that Claimant was capable of performing light exertional level work with limited reaching in all directions due to his right shoulder problems. (Tr. at 25, 550-57.) Likewise, the opinions of treating physicians Dr. Rago and Dr. Bal assessed lifting limitations similar to those assessed by the ALJ. (Tr. at 25, 668-71, 736-37.) Dr. Rago opined that Claimant was precluded from using his right upper extremity to carry moderate to heavy things and would have difficulty reaching overhead with the right upper extremity. (Tr. at 25, 668-71.) Dr. Bal opined that Claimant could neither lift or push and pull more than ten pounds and could not reach overhead. (Tr. at 25, 736-37.) However, as the ALJ found, Dr. Bal did not impose lifting restrictions of more than ten pounds with his left upper extremity. (Tr. at 25.) Furthermore, Dr. Kropac assessed only a seven percent impairment regarding his right shoulder impairment and did not expect the condition to progress. (Tr. at 25, 530-32.)

After reviewing the above evidence, together with Claimant's testimony and reported activities, the ALJ determined that Claimant was capable of performing light exertional level work that did not require overhead reaching with the right upper extremity, among other limitations. The Court finds that the ALJ's RFC assessment is consistent with the objective medical evidence of record and with Claimant's reported activities of daily living. The Court further finds that the ALJ's pain and credibility assessment is supported by substantial evidence. Accordingly, to the extent that Claimant alleges disability due to an inability to lift, push, or pull more than ten pounds, the Court finds that such argument is without merit and that the ALJ's decision is supported by substantial evidence.

2. <u>Review of Entire Record</u>.

A review of the entire record reveals that the decision of the Commissioner is supported by

substantial evidence. The ALJ thoroughly reviewed all of the medical evidence of record and considered the testimony of Claimant. (Tr. at 20-26.) The ALJ also complied with the applicable Regulations and case law in determining that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment, that Claimant was not entirely credible regarding the severity of his pain and other symptoms, and that Claimant was limited to light work with certain limitations, and could perform a significant number of jobs in the national economy despite his severe impairments.

Therefore, after careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the Court's docket.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2010.

R. Clarke VanDervort
United States Magistrate Judge